UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Abraham Kelty, #321472, | ) | C/A No. 5:15-cv-01130-MBS-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| vs. | ) | |
| | ) | |
| Warden Walden Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Abraham Kelty ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28
U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and
Recommendation on Respondent's Motion for Summary Judgment and Return. ECF Nos. 18, 19.
Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of
the summary judgment and dismissal procedures and the possible consequences if he failed to
respond adequately to Respondent's Motion. ECF No. 20. Petitioner filed a Response in
opposition to Respondent's Motion. ECF No. 22. Respondent did not file a reply to Petitioner's
Response. Having carefully considered the parties' submissions and the record in this case, the
undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.      Procedural History

Petitioner is currently incarcerated at Walden Correctional Institution, part of the South
Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. On May 22, 2005, a
Jasper County Grand Jury indicted Petitioner on one count of failure to stop for blue light/siren.

App. 150-51.[1] Also, on July 31, 2006, the Jasper County grand jury indicted Petitioner on one count of armed robbery, App. 152-53, and one count of possession of firearms during the commission of certain crimes. App. 154-55. On February 12, 2007, Petitioner attempted to plead guilty before Honorable Judge Carmen T. Mullen to "common law robbery" with a ten-year sentence cap and the other charges to be dismissed through *nol prosequi*. App. 1-6. However, Judge Mullen rejected the plea when Petitioner said he did not remember committing the charged crime. App. 8-9. The Assistant Solicitor then specifically withdrew the plea offer with the 10-year sentence cap and plea counsel was directed by the plea court to inform his client about the withdrawal of the offer. App. 9-10. Thereafter, on April 2, 2007 before jury selection was set to begin for a trial on the pending charges, Petitioner pleaded guilty to the armed-robbery charge. App. 29. In connection with the guilty plea, the State agreed to dispose of the other two charges through *nol prosequi*. App. 27. Attorney Dudley Ruffalo ("plea counsel") represented Petitioner at both hearings, Assistant Solicitor Darrell T. Johnson, Jr. represented the State of South Carolina during the February 12th hearing, App. 1, and Assistant Solicitor Thomas Johnson represented the State during the April 2nd plea hearing. App. 11. After denying a request to relieve plea counsel from representation and a motion for mental evaluation of Petitioner, App. 25, Judge Howard P. King ("the plea court") accepted Petitioner's plea, App.39, and imposed a fifteen-year sentence of imprisonment. App. 45. On April 26, 2007, a hearing was held on Petitioner's pro se motion to withdraw his guilty plea or for reconsideration of his sentence. Petitioner also moved to relieve plea counsel from representation, alleging that plea

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF No. 18-10.

2

counsel coerced him into pleading guilty. App. 47-67. The plea court granted the motion to relieve counsel after ensuring that the Jasper County Public Defender's Office would perfect a direct appeal for Petitioner if he wanted one. App. 54-56, 66. The plea court denied the motion to withdraw the guilty plea and the motion to reconsider the sentence. App. 65-66.

Petitioner pursued a timely direct appeal from the guilty plea and sentence. Petitioner's appellate counsel, Appellate Defender LaNelle C. Durant, filed her brief on February 19, 2009 and submitted the following issue for review: "Did the trial court err by denying Appellant's motion for mental evaluation and then by accepting Appellant's guilty plea?" ECF No. 18-1 at 4. The State filed a response brief. ECF No. 18-2. On January 28, 2010, the South Carolina Court of Appeals issued an unpublished, one-paragraph opinion affirming Petitioner's guilty plea and sentence. ECF No. 18-3; *State v. Kelty*, No. 2010-UP-057 (S.C. Ct. App. Jan. 28, 2010). Petitioner filed a post-conviction relief ("PCR") application on July 3, 2010, App. 69-88; *Kelty v. State*, No. 2011-CP-02-01294, raising the following grounds for relief:

(a) ineffective assistance of counsel
(b) involuntary guilty plea

App. 72. In the memorandum in support of his PCR application, Petitioner expanded on his grounds as follows,

ISSUE (A) <u>WAS COUNSEL INEFFECTIVE FOR FAILING TO MOVE THE [sic] ENFORCE THE 10-YEAR PLEA AGREEMENT, AS EXPRESSED BY THE PROSECUTION?</u>

ISSUE (B) <u>IS PETITIONER ENTITLED TO A SPECIFIC SENTENCE PERFORMANCE BASED ON HIS DETRIMENTAL RELIANCE OF [sic] THE STATE'S 10-YEAR PLEA AGREEMENT?</u>

App. 79; *Kelty v. State*, No. 10-CP-27-414. After the State filed its Return to the PCR application, App. 89-94, Petitioner submitted an "Amended and Supplemental" PCR application

through Attorney John J. Pinckney ("PCR counsel") on August 23, 2012. In that pleading, Petitioner's PCR counsel stated, "[i]n addition to grounds contained in his previous applications, Petitioner asserts that he was denied effective assistance of counsel when trial counsel failed to specifically enforce Applicant's plea agreement based upon the detrimental reliance doctrine expressed by the South Carolina Supreme Court in *Custodio v. South Carolina* 644 S.E.2d 36 (S.C. 2007)." App. 96. On March 13, 2013, PCR counsel filed a second supplemental PCR application, attaching two letters written by Petitioner which included additional grounds for PCR relief:

> 1. Did the court or my lawyer err in denying me a mental evaluation then accepting my plea?
>
> 2. GBMI (p.12, L. 20-23 my transcript) did my lawyer err in denying me a GBMI plea?
>
> 3. Shouldn't my plea be challenged because my lawyer pressured me into accepting, knowing that I was not taking my medications, as my medical records with SCDC indicates.
>
> 4. Store video never shows me pulling a gun on the clerk, nor forcing the clerk to give me money. Her statements contradicts [sic] what the store video shows.
>
> 5. Was it proper for [plea counsel] to step down as my lawyer when I requested to withdraw my plea; after he refused to remove himself so that I could seek paid counsel at my April 2, 2007 court appearance?

Petitioner also requested his PCR attorney to use the case of "Nicholas Boan v. State of South Carolina (July 12, 2010) . . . as part of [his] argument that [plea counsel] should have argued for [a] ten year with a cap plea agreement with the State." App. 99-106. An evidentiary hearing was held April 2, 2013 in Beaufort, South Carolina before the Honorable Judge Perry M. Buckner ("the PCR court"). Attorney John J. Pinckney represented Petitioner and Assistant

Attorney General Ashleigh R. Wilson represented the State at the hearing. App. 115. Only plea counsel testified at the hearing. App. 118-36. After Petitioner's PCR counsel rested his case, Petitioner indicated that he wished to testify, but the PCR court refused to allow it, stating "the record is now closed . . . ." App. 137. In this federal habeas case, neither party disputes that the PCR court's order accurately summarizes the testimony provided by the witnesses at the two plea hearings and the PCR hearing.[2] Thus, because the relevant portion of the order is quoted verbatim below, it is unnecessary for this court to provide a separate summary of the relevant testimony in this Report.

The PCR court issued an order dated April 30, 2013, finding that Petitioner did not prove that plea counsel was ineffective and dismissing PCR application with prejudice. The PCR court's order contained the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-780 (2003).

### Summary of Testimony

Trial counsel, Dudley B. Ruffalo, was present and testified he has been

---

[2] Petitioner argues in his Response to Respondent's Motion for Summary Judgment that he did not feign mental illness at the first plea hearing or discuss a non-existent "6 year" plea deal as plea counsel testified at the PCR hearing. He also says that plea counsel's PCR testimony describing the sentencing aspect of the plea offer made by the State was incorrect. ECF No. 22 at 3-6. However, Petitioner's failure to testify and place his own credibility at issue at the PCR hearing precludes this court from disregarding plea counsel's testimony about these matters, which the PCR court explicitly found to be credible. App. 146, 147; *Cagle v. Branker*, 520 F.3d at 324 (a PCR court's credibility findings are entitled to deference by a federal court).

practicing over 30 years. Counsel testified he was appointed to represent the Applicant. Counsel testified he met with the Applicant at least ten times prior to his plea. Counsel testified he filed <u>Brady</u> and Rule 5 motions on the Applicant's behalf. He testified he reviewed the discovery material he received with the Applicant and discussed with him the elements of the charge and what the State was required to prove.

Counsel testified it was often difficult to engage with the applicant because his story about the incident would change. Counsel testified the Applicant frequently discussed a "6 year plea deal" that was never offered. Counsel testified the Applicant would also fake mental health issues and claim he was on medications. Counsel testified the Applicant provided no potential witnesses or leads for investigation. Counsel testified his investigation included a review of the file, visiting the location, and speaking with the Applicant's former attorney, Stephen T. Plexico.

Counsel testified further he entered into plea negotiations on the Applicant's behalf. Counsel testified that originally the State offered a plea to 15 years for the armed robbery with a dismissal of all the remaining charges. Counsel testified he was able to get the plea down to 10 years for the armed robbery with dismissal of all the remaining charges. Counsel testified he communicated the offer to the Applicant and informed him of the consequences of his plea.

Counsel testified that before the Applicant went before Judge Mullen to plead to the 10 year negotiated sentence, the Applicant indicated he would fake a mental illness during the plea. Counsel testified that during the plea, the Applicant started twitching and tried to convince the Court he was suffering from a mental illness. Counsel testified he was not aware the Applicant suffered from any mental illness and he believed the exaggerated symptoms during the plea were made up. Counsel also testified he did not stop the Applicant's plea, but Judge Mullen would not accept the Applicant's plea to the 10 year sentence.

Counsel testified that after the initial plea before Judge Mullen, he advised the Applicant that the State's plea offer to 10 years was only available that day. He testified that after everything broke down with the plea, he told the Applicant the offer was withdrawn by the State and no longer available. Counsel testified further that the Applicant wanted him to request the 10 year offer be reinstated by the State. Counsel testified that any attempt he made to enforce the 10 year plea offer would have been a fraud on the Court.

Counsel testified that, after the original plea offer of 10 years was withdrawn by the State, a second plea offer of 15 years for armed robbery and the

remaining charges dismissed was made by the State. Counsel testified the Applicant wanted to accept the plea. He also testified that when the Applicant went before Judge King to plead guilty it was the Applicant's decision to plead guilty.

Lastly, counsel testified the Applicant gave no assistance to the State in exchange for a guilty plea. Counsel testified the Applicant's admission of guilt is a part of the guilty plea process and was not beneficial to the State because his admission was not used against him and the State already believed the Applicant was guilty. Counsel testified the evidence against the Applicant was overwhelming and it was ultimately the Applicant's desire to plead guilty.

### **Ineffective Assistance of Counsel**

The Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 334 S.E.2d 813. The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry, 386 S.E.2d 624.

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985); Roscoe v. State, 345 S.C. 16, 20, 546

S.E.2d 417, 419 (2001).

To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S. Ct. 1709, 1712 (1969); Dover v. State, 304 S.C. 433, 434, 405 S.E.2d.391, 392 (1991). When determining issues relating to guilty pleas, the court will consider the entire record, including the transcript of the guilty plea, and the evidence presented at the post-conviction relief hearing, Anderson v. State, 342 S.C. 54, 57, 535 S.E.2d 649, 657 (2000) (citing Harres v. Leeke, 282 S.C. 131, 318 S.E.2d 360 (1984)). When a defendant pleads guilty on the advice of counsel, the plea may only be attacked through a claim of ineffective assistance of counsel. Roscoe v. State, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2002) (citations omitted).

This Court finds counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements charges and what the State was required to prove, Applicant's constitutional rights, Applicant's version of the facts, and possible defenses or lack thereof. The record reflects that Applicant's plea was entered freely, voluntarily, knowingly, and intelligently. Applicant acknowledged that he was guilty of these offenses. Applicant told the plea court that he was satisfied with his attorney and that no one had threatened him or promised him anything to plead guilty. This Court finds that Applicant understood the terms of the negotiated sentence.

This Court finds the Applicant has failed to carry his burden of proving plea counsel should have tried to enforce the 10 year plea deal originally offered to the Applicant on the basis of detrimental reliance. A criminal defendant has "no right to be offered a plea . . . nor a federal right that the judge accept it." Lafler v. Cooper, 132 S.Ct. 1376, 1387, 182 L. Ed. 2d 398 (2012). The State may withdraw a plea bargain offer before a defendant pleads guilty, provided the defendant has not detrimentally relied on the offer. Reed v. Becka, 333 S.C. 676, 69 S.E.2d 396, 404 (Ct. App. 1999). Absent an actual plea of guilty, a defendant may enforce an oral plea agreement only upon a showing of detrimental reliance on a prosecutorial promise in plea bargaining. Id. at 688, 511 S.E.2d at 402. A defendant relies upon a solicitor's plea offer by taking some substantial step or accepting serious risk of an adverse result following acceptance of the plea offer. Id. at 689, 511 S.E.2d at 403. For example, a defendant who provides beneficial information to law enforcement can be said to have relied to his detriment. Id.

This Court finds counsel was not ineffective for failing to enforce the State's original 10 year plea offer. This Court finds and the record reflects that

after the Applicant told Judge Mullen about his medications and began twitching as indicated by counsel, the Court refused to accept the Applicant's plea of guilty. (Mullen T. 8). The record also reflects that immediately after the Court rejected the Applicant's plea, the State put on the record their office policy to withdraw plea offers that are not accepted by the Court and that the Applicant's plea offer was withdrawn. (Mullen T. 9). Counsel gave credible testimony that he advised the Applicant that his 10 year plea offer was withdrawn and that in good conscious he could not ask the Court to enforce the 10 year plea offer when it's [sic] rejection was based upon the Applicant's fraudulent behavior before the Court. This Court finds the Applicant's plea was rejected due to the Applicant's behavior and feigned mental illness.

This Court finds further the State was within its discretion to withdraw the plea offer for 10 years after the Court refused to accept the Applicant's guilty plea due to his behavior. This Court finds further the Applicant has failed to show detrimental reliance. The record reflects and counsel's credible testimony confirms, the Applicant did not provide any benefit to the State in exchange for a plea offer of 10 years. During the Applicant's initial plea, the State indicated on the record the negotiations were for 10 years with any related warrants *nolle prossed*. (Mullen T. 5). Counsel also provided credible testimony that no assistance was given by the Applicant to help the State. The Applicant has failed to provide any evidence showing he provided beneficial information to law enforcement or took some substantial step or accepted a serious risk of an adverse result after accepting the State's plea offer.

The Applicant argues he provided a benefit to the State for purposes of detrimental reliance during the initial plea before Judge Mullen when he admitted his guilt. Most pleas of guilty consist of a waiver of trial and an express admission of guilty [sic]. N. Carolina v. Alford, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970). This Court finds the Applicant's admission of guilt at the initial plea proceeding was a standard part of the guilty plea proceeding. This Court finds further the Applicant's admission of guilty [sic] provided no benefit to law enforcement sufficient to establish detrimental reliance.

The Applicant also alleges the facts in Custodio v. State, are analogous to this case. 373 S.C. 4, 644 S.E.2d 36 (2007). This Court finds Custodio is distinguishable from this case. In Custodio the defendant provided beneficial information by helping law enforcement solve several burglary crimes and return over a half million dollars in stolen property. In this case, the Applicant has failed to prove he provided such substantial assistance to law enforcement. This Court finds this allegation is without merit and counsel did not provide ineffective assistance of counsel.

9

Accordingly, this Court finds the Applicant has failed to prove the first prong of the <u>Strickland</u> test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in her [sic] representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. Therefore, this Court need not address prejudice. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

### All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

### CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this application for PCR must be denied and dismissed with prejudice.

App. 141-48 (footnote omitted) (noting that Petitioner did not testify at the PCR hearing). A

*Johnson* petition for writ of certiorari seeking review of the PCR court's final judgment was

submitted on Petitioner's behalf to the South Carolina Supreme Court on February 3, 2014. ECF

No. 18-6; *Kelty v. State*, No. 2013-001113 (S.C.).[3] Appellate Defender Carmen V. Ganjehsani

raised the following issue for the court's review quoted verbatim: "Plea counsel provided

ineffective assistance of counsel in failing to have a ten year plea agreement between Petitioner

---

[3] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), addressing the procedures for counsel to follow when filing what they perceive to be meritless appeals in state PCR cases pursuant to *Anders v. California* and requesting to be relieved from representation.

and the State enforced." ECF No. 18-6 at 2. Petitioner submitted a pro se supplemental brief in which he argued that plea counsel lied during his PCR testimony because of personal animosity to Petitioner, the State's evidence did not show him with a gun in the convenience store, plea counsel should have raised a guilty-but-mentally-ill defense, and that he was coerced into pleading guilty because he felt he "had no other choice . . . ." Petitioner also argued that his PCR counsel lied to him and refused to let him "bring forth his arguments." ECF No. 18-7 at 2-7, 9. On October 8, 2014, the South Carolina Supreme Court issued an order denying the petition for certiorari without analysis and relieving Petitioner's PCR appellate counsel from representation. ECF No. 18-8. The remittitur was issued on October 24, 2014. ECF No. 18-9.

II.     Discussion

A.     Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

**Ground One**: GBMI, GBMI DUE TO ALCOHOL DEPENDENCE REQUEST FOR MENTAL EVALUATION DENIED

. . . .

My VA records shows [sic] I was being treated for depressive disorder and alcohol dependence. My lawyer refused to have me evaluated. The Judge also refused to have me evaluated. I told the judge I could not remember the incident but he still took my plea.

. . . .

**Ground Two**: My lawyer forced me to lie and take the plea, lawyer also lied about length of time I was taking zoloft.

. . . .

11

I have letters I wrote about my lawyers tactics to the Lawyers Misconduct Counsel prior to being forced to lie and accept the plea. My lawyer lied during my PCR hearing about the length of time I was on zoloft.

. . . .

**Ground Three**: The arresting officer was forced to resign prior to my lawyer forcing me to take this plea.

. . . .

Captain White was forced to resign prior to me taking my plea. Captain White stated at the preliminary hearing there was no gun in the store video. The video I saw shows no gun. My lawyer refused to use this video and take me to trial. If the arresting officer is removed from duty why was I forced to take this plea.

. . . .

**Ground Four**: I should receive the 10 years with a cap of 10 agreed upon by Judge Mullens and the Solicitor on 12 Feb 2007.

. . . .

My lawyer Mr. Ruffalo refused to argue before Judge King for the 10 years non-violent sentence on 2 April 2007. I had already plead guilty to the charges, but after I told her I could not remember the incident she withdrew the plea and told my lawyer and the solicitor they could bring me back before her at anytime in the future.

ECF No. 1 at 5-10.

> B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134

F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

### a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

14

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing

evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

### b.    Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered

additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101.

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state

17

courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as

follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
>  (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>  (B)(i) there is an absence of available State corrective process; or
>
>  (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner

first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the

exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."

*Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United

States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those

issues that have been properly presented to the highest state courts with jurisdiction to decide

18

them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the

doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required

showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome Respondent's contention, it is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

c.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner

may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

3.        Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id*.

III.    Analysis

      A.    Procedurally Barred Claim

            1.    Ground Three (restated): Petitioner's Plea Should Be Vacated Because the Law Enforcement Officer Who Arrested Petitioner Was Forced to Resign Before the Plea Was Entered.

                    a.    The Parties' Positions

Respondent contends that Petitioner's Ground Three is procedurally defaulted because it was not presented to any state court for consideration. ECF No. 18 at 34. Petitioner responds that any failure to raise this issue was caused by his PCR counsel's failure to call him as a witness at

22

the PCR hearing. ECF No. 22 at 4.

b.     Discussion

Petitioner does not make any argument in his Response to the Motion for Summary Judgment now before the court that specifically references "procedural default" or "procedural bypass" despite Respondent's clear contention that this court should not address the merits of his Ground Three. He also does not allege that his PCR counsel was ineffective for failing to take his testimony about the officer's resignation. Instead, he appears to argue the merits of his contention that the forced resignation of the arresting officer in his case supports his current claim that the State's evidence against him was not strong and that his plea counsel "lied" during the PCR hearing. ECF No. 22 at 2. Thereafter in his Response, without specific reference to his Ground Three, Petitioner makes a general assertion that he failed to raise some or all of his issues because his "PCR Lawyer was working against [him]" and then proceeds to argue the merits of other Grounds in his Petition. ECF No. 22 at 4-5.

The undersigned's independent review of the record in this case discloses that Respondent's contention that the fact that the arresting law-enforcement officer was forced to resign from his position before Petitioner pleaded guilty was never raised as an issue for consideration before any state court. Thus, Respondent's position that Ground Three was procedurally bypassed and therefore barred from consideration by this court is well taken. Even if this court were to liberally construe the pro se Petitioner's general claim that his PCR counsel failed to call him as a witness at the PCR hearing as an assertion that PCR counsel "caused" the procedural default of Ground Three, there are no facts alleged from which this court could find that Petitioner's Ground Three asserts ineffectiveness of plea counsel or that PCR counsel was

23

ineffective in failing to let Petitioner testify about this issue at the PCR hearing. *See Martinez v. Ryan*, _ U.S. _, 132 S. Ct. 1309 (2012) (establishing a "limited qualification" to the rule in *Coleman v. Thompson*, 501 U.S. 722 (1991), that errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of a claim of ineffectiveness of trial counsel); *see also LaRoche v. Dunlap*, No. 4:14-CV-00222-JMC, 2015 WL 1298473, at *11 (D.S.C. Mar. 23, 2015) (petitioner did not establish a "substantial" ineffective assistance of trial counsel claim and "failed to meet the requirements of *Martinez* to show that his PCR counsel was ineffective"), *appeal dismissed*, 607 F. App'x 323 (4th Cir. 2015); *see also Sexton v. Cozner*, 679 F.3d 1150, 1161 (9th Cir. 2012) ("Because [the petitioner] has not shown that [PCR counsel] was ineffective, he has not shown cause to excuse his procedural default, and therefore, has not shown that his case warrants remand under *Martinez*."). Moreover, Petitioner's failure to assert the required cause and prejudice from such bypass or otherwise directly address Respondent's contentions of procedural default/bypass amounts to a concession on this point. *See Petrucelli v. Dep't of Justice*, No. 11-1780 (RBW), 2014 WL 2919285, at *7 (D.D.C. June 27, 2014 (prisoner case; citing *Maydak v. DOJ*, 579 F. Supp. 2d 105, 107) (D.D.C. 2008); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). Accordingly, this court should not address the merits of this Ground and Respondent's Motion for Summary Judgment should be granted on Petitioner's Ground Three.

B.     Merits Analysis: Grounds One, Two, and Four

1.     Ground One (restated): The Plea Court Erred in Denying Plea Counsel's Motion for a Mental Evaluation and Plea Counsel was Ineffective for Failing to Assert a Defense of

Guilty But Mentally Ill ("GBMI") on Petitioner's Behalf

a.     The Parties' Positions

Respondent contends that Petitioner waived any error with regard to the plea court's denial of plea counsel's motion for a mental evaluation of Petitioner when he voluntarily and intelligently entered his guilty plea. Respondent also contends that the record supports the PCR court's decision that Petitioner failed to prove that plea counsel was ineffective for failing to assert a GBMI defense in his case. ECF No. 18 at 30. Petitioner responds that plea counsel lied to the PCR court when he said that Petitioner was feigning mental illness before the original plea court. ECF No. 22 at 4. Petitioner also responds to "clear up . . . confusion" that he was taking Zoloft prior to his arrest and that his V.A. records showed that he "suffered from alcohol dependence . . . was hearing voices, and . . . was being treated for depression." He states that his lawyer "refused to address [this] issue [and] never intended to be an effective defense lawyer for [him]." *Id*. at 10.

b.     Discussion

The South Carolina Supreme Court specifically rejected Petitioner's claim on direct appeal that the plea court erred in failing to order a mental evaluation upon a holding that Petitioner waived any error in this regard by subsequently pleading guilty. ECF No. 18-3. Although plea counsel's PCR testimony about his impressions of Petitioner's mental condition during the plea proceedings was summarized in the PCR court's order, App. 143, the PCR court did not specifically analyze those facts or discuss a potential GBMI defense in connection with his discussion of Petitioner's claims of ineffective assistance of counsel. App. 145-48. However, the PCR court did specifically find that plea counsel "discussed . . . possible defenses or lack

25

thereof," App. 145, and found plea counsel's testimony to be credible and then found that the original guilty plea "was rejected due to [Petitioner's] behavior and feigned mental illness." App. 146.

Applicable law indicates that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations. *See Tollett v. Henderson,* 411 U.S. 258, 266-67 (1973) (holding that a counseled guilty plea barred a state prisoner's claim of racial discrimination in the selection of the indicting grand jury); *see also Mabry v. Johnson,* 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); *Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1294-95 (4th Cir. 1992);*United States v. Wiggins,* 905 F.2d 51, 52 (4th Cir. 1990). Once judgment on a plea is final, collateral inquiry is limited to whether the plea itself was counseled and voluntary. *See, e.g., United States v. Broce,* 488 U.S. 563, 569 (1989); *Mabry,* 467 U.S. at 508-09; *Tollett,* 411 U.S. at 266-67. Additionally, insofar as review of claims of ineffective assistance of counsel raised by persons who pleaded guilty is concerned, the United States Supreme Court has stated,

> Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial . . . . The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance.

*Premo v. Moore*, 562 U.S. 115, 132 (2011). Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, the Supreme Court has held that a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed.

*Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents reasons why he should be allowed to depart from the truth of his statements. *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327, 350 (4th Cir. 1985); *Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976); *see Turner v. Warden, Livesay Corr. Inst.*, No. 6:11-cv-2692-RBH, 2012 WL 3834840, at *9 (July 27, 2012), *report and recommendation adopted*, 2012 WL 3834863 (D.S.C. Sept. 4, 2012).

To the extent that Petitioner's Ground One is construed as a freestanding claim of constitutional violation by the plea court in its denial of plea counsel's motion for a mental evaluation of Petitioner, Respondent's contention that Petitioner waived this Ground is correct. As the plea court held, the record discloses that Petitioner's plea was entered freely and voluntarily. Petitioner specifically told the plea court that his ability to know and understand what he was doing that day was not affected by the prescription medication that he was taking at the time the plea hearing was conducted. He also told the plea court that despite what was shown in his VA records, which the court had before it, he had no "physical, emotional or nervous problems" that would affect his understanding of the plea process. App. 32. Petitioner also responded affirmatively to the plea court's questions about his understanding of the nature of the charges against him, about whether he committed the charged robbery, about his understanding of the trial-related rights that he was giving up by pleading guilty, and about his satisfaction with plea counsel's services. App. 32-38. Petitioner did not testify at the PCR hearing and, therefore, never placed the veracity of his plea-hearing statements at issue before the state courts. Now, in this habeas case, he makes conclusory assertions that he was "coersed [sic]" and "tricked" and

27

"made" to lie to the plea court by plea counsel, ECF No. 22 at 3, 5, but he does not specify which of his many statements to the plea court were untruthful nor does he say what, exactly, plea counsel did to coerce or trick him into pleading guilty. Instead, the major portion of his Response contains arguments about the sufficiency of the State's evidence relating to the armed robbery to which he pleaded guilty and his detrimental-reliance theory under which he asked the PCR court to order specific performance of the original plea offer that the State made in February 2007. Petitioner has not shown anything in this case to overcome the "strong presumption of veracity" carried by his statements at the guilty plea hearing. As found by the PCR court, those statements support the plea court's decision that Petitioner's guilty plea was voluntary, knowing, and intelligent. *See United States v. Morrow*, 914 F.2d 608, 614 (4th Cir. 1990).

Furthermore, to the extent that Petitioner's Ground One may be construed as a claim that plea counsel was ineffective for failing to present a GBMI defense on Petitioner's behalf, the applicable law holds that, where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court articulated a two-prong test to use in determining whether counsel was constitutionally ineffective. First, the petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the petitioner must show that counsel's deficient performance prejudiced the defense to the extent that the Petitioner was deprived of a fair trial. The Fourth Circuit Court of Appeals has held that counsel must conduct a basic factual and legal

investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d 1348, 1352 (4th Cir. 1982). "At the heart of effective representation is the independent duty to investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. 881, 885 (E.D.N.C. 1983) (citing *Goodwin v. Balkcom,* 684 F.2d 794, 805 (5th Cir. 1982)). "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.* (citing *Gaines v. Hopper,* 575 F.2d 1147, 1149-50 (5th Cir. 1978)). Also, the Fourth Circuit has held that a PCR court's credibility findings are entitled to deference by this court. *Wilson v. Ozmint,* 352 F.3d at 858-859; *Cagle v. Branker*, 520 F.3d at 324. The United States Supreme Court has ruled that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Finally, the Fourth Circuit has also held that district courts should "accord appropriate deference" to the state PCR court's factual findings and that such findings are presumed to be correct and can only be overcome by the presentation of "clear and convincing evidence." *Watkins v. Rubenstein*, 802 F.3d 637, 643 (4th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1) and *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011)).

The record shows that the only person to testify at the PCR hearing was plea counsel, and the PCR court found that his statements -- indicating that he considered whether or not Petitioner was mentally impaired during the pretrial period and during the plea hearings and found that he was feigning mental illness -- were credible. Although Petitioner now questions some details of that testimony regarding the length of time that he had been treated for depression by the VA and taking certain medications for that condition, he did not present any opposing testimony at the

PCR hearing. However, Petitioner's PCR counsel closely examined plea counsel regarding his understanding of Petitioner's mental condition, App. 123-24, and plea counsel's responses to such questioning supports the PCR court's determination that he had adequately considered the issue and any defenses that might arise from it. In fact, the record shows that plea counsel requested a mental evaluation for Petitioner even though that request was denied by the plea court, which conducted its own, independent discussion with Petitioner about his mental state and found him fully competent before accepting his guilty plea. App. 16-25. The plea court also directly asked plea counsel if he had considered a GBMI defense, and plea counsel responded that he had considered it but decided that Petitioner's main problem was alcohol abuse and that some problems with remembering events. App. 16-17, 23. All of these facts support the finding that Petitioner failed to prove that plea counsel was ineffective for failing to investigate or present a GBMI defense. Giving due deference to the PCR court's credibility determination particularly in light of the absence of conflicting evidence, *see Marshall v. Lonberger*, 459 U.S. at 434, the undersigned determines that Petitioner has not shown that the PCR court's finding that plea counsel provided effective assistance to Petitioner was based on an unreasonable interpretation of the facts presented at the PCR hearing and in the record before the court. Also, the PCR court's decision does not conflict with established federal law. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground One.

      2.      Ground Two (restated): Ineffectiveness of Plea Counsel for Lying During the PCR Hearing About the Amount of Time Petitioner Had Been Taking Zoloft

      a.      The Parties' Positions

Respondent contends that even if plea counsel's PCR testimony about Petitioner's

medication history was erroneous, any error in the PCR court's acceptance of that testimony is not a basis for habeas relief. ECF No. 18 at 31. Respondent also contends that the disputed testimony was irrelevant to the PCR court's decision, and the record from the plea hearing and his failure to testify at the PCR hearing defeats Petitioner's claim that counsel forced him to lie and take the plea. *Id*. at 32-33. Petitioner responds that his failure to testify at the PCR hearing was caused by his PCR counsel and the PCR court's refusals of his requests to do so. ECF No. 22 at 4, 5, 11. Petitioner asserts that he was taking Zoloft before his arrest in December 2005, but he was given two different medications when he was detained in a Georgia detention center. He states that he did not begin taking Zoloft again until he was subsequently transferred to the Ridgeland County Detention Center in South Carolina. *Id*. at 10.

b.     Discussion

The PCR court summarized plea counsel's testimony about his belief that Petitioner was feigning mental illness. App. 142-43. The court specifically found that plea counsel's testimony was credible and that it showed adequate investigation and effective representation. App. 145-145-46. However, there is no reference to the medication Zoloft anywhere in the PCR court's dismissal order. Although Petitioner does not explicitly state that the PCR court committed error in accepting plea counsel's testimony or that his PCR counsel was ineffective in his examination of plea counsel at the PCR hearing, his references to the testimony as "lies" and his placing the fault for his own failure to testify on his PCR counsel indicates that, liberally construed, this is the substance of his arguments on this Ground. The record shows that Petitioner's PCR counsel was allowed to question plea counsel without limitation on the subject of his understanding of Petitioner's mental conditions and about how they affected his initial effort to plead guilty, but

he did not ask anything about the medications that Petitioner allegedly took or about plea counsel's understanding of those medications. App. 124-25. The testimony that Petitioner now disputes was given by plea counsel in response to an open-ended question from the State's PCR counsel about plea counsel's understanding of Petitioner's "version of the facts," App. 129, but Petitioner's PCR counsel did not cross examine plea counsel about his testimony about Petitioner's history of taking Zoloft. Also, Petitioner did not testify at the PCR hearing to dispute plea counsel's testimony in this regard. Thus, it appears that plea counsel's limited PCR testimony about Petitioner's history of taking Zoloft was never placed at issue in the PCR proceedings. However, to the extent that this Ground raises a claim of PCR court error or ineffective assistance of PCR counsel with regard to the admission of the now-disputed testimony, the undersigned agrees with Respondent it should be dismissed. Applicable law holds that such claims do not provide a basis for federal habeas relief. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Bryant v. Maryland*, 848 F.3d 492, 493 (4th Cir. 1988); *Taylor v. Warden at Allendale,* No. No. 2:13-cv-2213-RMG, 2014 WL 4721183, ** 4-5 (D.S.C. Sept. 22, 2014) (citing *Lawrence v. Branker*, 517 F.3d 700 (4th Cir. 2008)). Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Two.

> 2.      Ground Four (restated): Petitioner Should Have Been Allowed to Accept the State's Original Plea Offer and Receive a 10-year Cap on the Sentence
>
> a.      The Parties' Positions

Respondent contends that the record fully supports the PCR court's determination that

32

Petitioner did not detrimentally rely on the original plea offer made by the State simply by subsequently pleading guilty. Respondent also contends that the record shows that Petitioner was aware that the offer was withdrawn and no longer effective when the first plea judge refused to accept Petitioner's plea. ECF No. 18 at 35. Respondent also contends that the PCR court reasonably determined that plea counsel was not ineffective for failing to enforce the original plea offer. *Id*. at 36. Petitioner responds that he disputes plea counsel's PCR testimony and Respondent's current contention that he was informed that the original plea offer was withdrawn. He asserts that he is "entitled to a specific sentence performance of 10 years" because he detrimentally relied on the original plea offer when he pleaded guilty. He contends that plea counsel was ineffective for not attempting to enforce the original plea offer and that his PCR counsel improperly refused to argue a case called "Boan v. State (opinion No. 26832, July 12, 2010)." ECF No. 22 at 5-8.

b.     Discussion

The PCR court extensively discussed and analyzed Petitioner's claim that he was entitled to specific performance of the original plea offer made by the State on the legal theory of detrimental reliance. App. 146-47. The court factually distinguished *Custodio v. State*, 644 S.E. 2d (2007), a case that Petitioner and his PCR counsel cited to him as support for their theory of detrimental reliance, finding that the criminal defendant in that case, unlike Petitioner, had provided substantial crime-solving assistance to law enforcement in reliance on the plea offer he sought to enforce. The PCR court rejected Petitioner's theory upon a finding that Petitioner did not provide any benefit to the State and did not detrimentally rely on withdrawn offer when he admitted guilt on the armed robbery charge because such an admission was "a standard part of

33

the guilty plea proceeding." App. 147. Finally, the PCR court found that Petitioner did not prove that plea counsel was ineffective for not trying to enforce the original plea offer when the plea court accepted Petitioner's guilty plea. App. 148.

The record appears to show that Petitioner was present in the courtroom with plea counsel when the Assistant Solicitor expressly withdrew the original plea offer after the court refused to accept Petitioner's plea, and Petitioner does not dispute this fact before this court. The record also shows that after the attempted plea was rejected on February 12, 2007, the Assistant Solicitor specifically told the presiding judge, plea counsel, and Petitioner that his office had a "policy that when plea negotiation are not accepted . . . . they are withdrawn." App. 9. The attorney emphasized that he was informing the participants of this policy so that there would not be any "misunderstanding," and the presiding judge stated that the policy was "noted for the record" at the close of the hearing. App. 9. Nearly two months later, there was considerable discussion among the Assistant Solicitor, plea counsel, and the plea court about the fact that the State's original plea offer was no longer effective and that the only plea offer then available until the end of that day was for Petitioner "to plead guilty, basically, straight up, to armed robbery in return for which the state would dismiss the weapons and the blue light charge." App. 26-27. It appears that Petitioner was present in the courtroom during that discussion and he does not claim otherwise in this court. After a lunch break, the plea court referenced "an offer [that] was tendered by the State about forty-five minutes ago" and then immediately and directly addressed Petitioner, asking "is it your intention to accept the offer that was tendered by the State, or do you wish to plead not guilty and go forward with a trial?" App. 28-29. Petitioner responded "I'm going to go forward with the offer. . . ." App. 29. The plea court repeated that the offer was to

"plead guilty to one count of armed robbery and the others will be nol prossed . . .," to which the Assistant Solicitor responded "[t]hat is correct." *Id.* After Petitioner responded affirmatively to the plea court's inquiries into his understanding of the effects of entering a guilty plea and of the charges that were pending against him, the plea court specifically informed him that by pleading guilty to armed robbery he could "get from ten years to thirty years in prison." Petitioner responded that he understood that and he did not mention anything about a ten-year cap on the sentence. App. 33. The plea court then directly addressed the Assistant Solicitor to confirm that there were no other plea negotiations except for the dismissal of the other two charges and, after receiving a response "[t]hat's correct, sir," restated the offer that was then available and asked Petitioner if anyone had promised him anything else in return for his guilty plea. Petitioner responded "no sir" and also confirmed that he was entering his plea on his "own free will and accord." App. 36. Although the plea court specifically gave Petitioner an opportunity to ask him anything about what he had gone over, App. 37, neither Petitioner nor plea counsel referred to the original offer with a ten-year cap on the sentence at any point in the remainder of the plea hearing. When he was given a specific opportunity to address the plea court before the sentence was imposed, Petitioner did not propose a ten-year cap on his sentence. Instead, he told the plea court that he was placing himself at the court's mercy and asked for a chance to save his life. App. 43-44. Petitioner also did not mention anything about a ten-year cap on the sentence some two weeks later when he unsuccessfully argued a motion to withdraw his guilty plea, although he did briefly state that he believed the first judge was the one who withdrew the original plea. App. 64. Under questioning by Petitioner's PCR counsel at the PCR hearing, plea counsel testified that the original plea offer was withdrawn by the State and that Petitioner was aware of that. Plea

counsel also testified that he tried to get the "ten-year plea" back after the first judge rejected Petitioner's plea, but that it "was gone forever." App. 124-26. Plea counsel also stated that he did not try to enforce the original plea agreement before the plea court because he believed that do so would be fraud on the court. App. 127. Plea counsel also confirmed to the State's PCR counsel that both he and Petitioner were aware that the original plea offer was withdrawn. App. 132-33. Plea counsel also testified that Petitioner did not "provide any information, any tips, any cooperation to the police to help them with other matters in exchange for his guilty plea." App. 133. He also told Petitioner's PCR counsel that a person's admission of guilt is not of special benefit to the State and is "just part of the process." App. 134. As stated previously, Petitioner did not testify at the PCR hearing to dispute plea counsel's testimony. Moreover, he does not directly dispute the veracity of plea counsel's testimony in this regard before this court in his Response to the Motion for Summary Judgment now under consideration. Although he vaguely asserts that his PCR counsel improperly refused to make an argument based "Boan v. State," Petitioner does provide a complete citation to that case and does not discuss its holding or its relevance to any Ground involved in this case. Nevertheless, independent research discloses a 2010 opinion from the South Carolina Supreme Court, *Boan v. State*, 695 S.E.2d 850 (S.C. 2010), but that case does not appear relevant to his Ground Four because it does not involve a guilty plea or detrimental reliance. Instead, *Boan* addresses a claim of ineffective assistance of trial counsel for failure to correct an obviously prejudicial conflict between the length of a sentence as orally imposed after a conviction by jury and the length of the sentence as shown on the written sentencing sheet later signed by the sentencing judge. Thus, the undersigned finds that Petitioner's citation of *Boan* is of no benefit to his argument in support of his Ground Four.

36

Additionally, as previously noted, even if this court were to find that Petitioner's PCR counsel rendered ineffective assistance of counsel by not arguing the *Boan* case to the PCR court, that finding would not be a basis for federal habeas relief in this case. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

In light of the record testimony summarized above and the absence of any substantial contrary factual or legal analysis from Petitioner, the undersigned finds that the PCR court's determination that Petitioner failed to prove that plea counsel was ineffective for not attempting to enforce the original plea offer when Petitioner decided to plead guilty nearly two months after that offer was clearly withdrawn by the State was based on a reasonable interpretation of the facts. Petitioner did not provide substantial assistance to law enforcement or to the Jasper County Solicitor simply by pleading guilty to a crime for which he was already charged, and he has not provided this court with any facts that would require it to disregard plea counsel's PCR testimony, which the PCR court specifically found to be credible. *See Wilson v. Ozmint*, 352 F.3d at 858-859 (state court's reasonable credibility determinations are entitled to deference from federal courts). Furthermore, Petitioner has not provided any facts to the court that reasonably call into question the veracity of his testimony before the plea court regarding his understanding of the State's offer to which he ultimately pleaded guilty. *See Butler v. Warden, Lee Corr. Inst*., No. 4:15-cv-00653-RMG, 2015 WL 7428566, at * 4 (D.S.C. Nov. 20, 2015) (citing *Crawford v. United States*, 519 F.2d at 350). Thus, the undersigned finds that the PCR court's decision on Petitioner's claims of detrimental reliance on the withdrawn plea offer and ineffective assistance of plea counsel was based on a reasonable interpretation of the facts before

the court. Also, the PCR court's decision does not conflict with established federal law. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground Four.

### IV.    Conclusion

The undersigned has considered each of Petitioner's Grounds for habeas relief and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 19, be GRANTED and that the Petition in this case be DISMISSED with prejudice. **Petitioner's attention is directed to the important notice on the following page.**

IT IS SO RECOMMENDED.

December 18, 2015                              Kaymani D. West
Florence, South Carolina                      United States Magistrate Judge

38

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).